IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION

| | | |
|---|---|---|
| ROGER DALE PARSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| VS. | ) | No. 11-1368-JDT-egb |
| | ) | |
| NORMAN RHODES, ET AL., | ) | |
| | ) | |
| Defendants. | ) | |

ORDER DENYING MOTION FOR APPOINTMENT OF COUNSEL
ORDER OF DISMISSAL
ORDER CERTIFYING APPEAL NOT TAKEN IN GOOD FAITH
AND
NOTICE OF APPELLATE FILING FEE

On December 5, 2011, Plaintiff Roger Dale Parson, Tennessee Department of Correction prisoner number 213447, who is currently an inmate at the Whiteville Correctional Facility ("WCF") in Whiteville, Tennessee, filed a *pro se* complaint pursuant to 42 U.S.C. § 1983, accompanied by a motion seeking leave to proceed *in forma pauperis*. (Docket Entries 1 & 2.) In an order issued on December 8, 2011, the Court granted leave to proceed *in forma pauperis* and assessed the civil filing fee pursuant to the Prison Litigation Reform Act ("PLRA"), 28 U.S.C. §§ 1915(a)-(b). (D.E. 3.) The Clerk shall record the Defendants as Norman Rhodes, the Chief of Police for the City of Tiptonville; Bobby Spicer, an investigator with the Tiptonville Police Department; the City of Tiptonville;[1] Ricky Lee Parson, Jr.; and Crystal Humfress Burkett. Defendants Parson and Burkett are not further identified.

---

[1] The Court construes the allegations about the "City of Tiptonville, Police Department" (D.E. 1 at 1) as an attempt to assert a claim against the City of Tiptonville.

On April 25, 2012, Plaintiff filed a motion for appointment of counsel. (D.E. 9.) Pursuant to 28 U.S.C. § 1915(e)(1), "[t]he court may request an attorney to represent any person unable to afford counsel." However, "[t]he appointment of counsel in a civil proceeding is not a constitutional right." Lanier v. Bryant, 332 F.3d 999, 1006 (6th Cir. 2003); see also Shepherd v. Wellman, 313 F.3d 963, 970 (6th Cir. 2002) ("[T]he plaintiffs were not entitled to have counsel appointed because this is a civil lawsuit."); Lavado v. Keohane, 992 F.2d 601, 605-06 (6th Cir. 1993) (no constitutional right to counsel in a civil case); Farmer v. Haas, 990 F.2d 319, 323 (7th Cir. 1993) ("There is no constitutional or . . . statutory right to counsel in federal civil cases . . . .") (1993). Appointment of counsel is "'a privilege that is justified only by exceptional circumstances.'" Lavado, 992 F.2d at 606 (quoting Wahl v. McIver, 773 F.2d 1169, 1174 (11th Cir. 1985)).

> In determining whether "exceptional circumstances" exist, courts have examined "the type of case and the abilities of the plaintiff to represent himself." Archie v. Christian, 812 F.2d 250, 253 (5th Cir. 1987); see also Poindexter v. FBI, 737 F.2d 1173, 1185 (D.C. Cir. 1984). This generally involves a determination of the "complexity of the factual and legal issues involved." Cookish v. Cunningham, 787 F.2d 1, 3 (1st Cir. 1986).

Id. at 606. Appointment of counsel is not appropriate when a *pro se* litigant's claims are frivolous or when his chances of success are extremely slim. Id. (citing Mars v. Hanberry, 752 F.2d 254, 256 (6th Cir. 1985)); see also Cleary v. Mukasey, 307 F. App'x 963, 965 (6th Cir. 2009) (same).[2]

Plaintiff has not satisfied his burden of demonstrating that appointment of counsel would be appropriate in this case. Nothing in Plaintiff's motion distinguishes this case from numerous other cases litigated by *pro se* prisoners who are untrained in the law. The motion for appointment of counsel is DENIED.

---

[2] These factors are important, because § 1915(e)(1) "does not authorize the federal courts to make coercive appointments of counsel" to represent indigent civil litigants. Mallard v. United States Dist. Ct., 490 U.S. 296, 310 (1989).

The complaint alleges that, on June 12, 2009, Defendant Rhodes arrested Plaintiff for the offense of aggravated burglary. Rhodes allegedly "failed to do his job, by not takeing [sic] any finger print's." (D.E. 1 at 3.) Rhodes also did not fingerprint Plaintiff on June 18, 2009, which constituted official misconduct. On September 23, 2011, Rhodes committed aggravated perjury while testifying under oath. Because Rhodes is employed by the City of Tiptonville, the City allegedly is also liable. (Id. at 4.)

On June 12, 2009, Plaintiff was arrested by Defendant Spicer.[3] Defendant Spicer failed to investigate the crime scene, which constituted official misconduct. Spicer also committed aggravated perjury on June 18, 2009, and, again, at Plaintiff's trial on September 23, 2011. (Id.)

Plaintiff asks that the Defendants be charged with official misconduct and aggravated perjury. (Id. at 5.) He also seeks compensatory and punitive damages. (Id.)

The Court is required to screen prisoner complaints and to dismiss any complaint, or any portion thereof, if the complaint—

    (1)    is frivolous, malicious, or fails to state a claim upon which relief may be granted; or

    (2)    seeks monetary relief from a defendant who is immune from such relief.

28 U.S.C. § 1915A(b); see also 28 U.S.C. § 1915(e)(2)(B).

In assessing whether the complaint in this case states a claim on which relief may be granted, the standards under Fed. R. Civ. P. 12(b)(6), as stated in Ashcroft v. Iqbal, 556 U.S. 662, 677-79 (2009), and in Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555-57 (2007), are applied. Hill v. Lappin, 630 F.3d 468, 470-71 (6th Cir. 2010). "Accepting all well-pleaded allegations in the

---

[3] It is unclear if Plaintiff was arrested twice on June 12, 2009, or whether Rhodes and Spicer were both involved in the same arrest.

complaint as true, the Court 'consider[s] the factual allegations in [the] complaint to determine if they plausibly suggest an entitlement to relief.'" Williams v. Curtin, 631 F.3d 380, 383 (6th Cir. 2011) (quoting Iqbal, 556 U.S. at 681). "[P]leadings that . . . are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." Iqbal, 556 U.S. at 679; see also Twombly, 550 U.S. at 555 n.3 ("Rule 8(a)(2) still requires a 'showing,' rather than a blanket assertion, of entitlement to relief. Without some factual allegation in the complaint, it is hard to see how a claimant could satisfy the requirement of providing not only 'fair notice' of the nature of the claim, but also 'grounds' on which the claim rests.").

"A complaint can be frivolous either factually or legally." Hill, 630 F.3d at 470 (citing Neitzke v. Williams, 490 U.S. 319, 325 (1989)). "Any complaint that is legally frivolous would *ipso facto* fail to state a claim upon which relief can be granted." Id. (citing Neitzke, 490 U.S. at 328-29).

> Whether a complaint is factually frivolous under §§ 1915A(b)(1) and 1915(e)(2)(B)(i) is a separate issue from whether it fails to state a claim for relief. Statutes allowing a complaint to be dismissed as frivolous give judges not only the authority to dismiss a claim based on an indisputably meritless legal theory, but also the unusual power to pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless. Unlike a dismissal for failure to state a claim, where a judge must accept all factual allegations as true, a judge does not have to accept "fantastic or delusional" factual allegations as true in prisoner complaints that are reviewed for frivolousness.

Id. at 471 (citations and internal quotation marks omitted).

"*Pro se* complaints are to be held 'to less stringent standards than formal pleadings drafted by lawyers,' and should therefore be liberally construed." Williams, 631 F.3d at 383 (quoting Martin v. Overton, 391 F.3d 710, 712 (6th Cir. 2004)). *Pro se* litigants, however, are not exempt from the requirements of the Federal Rules of Civil Procedure. Wells v. Brown, 891 F.2d 591, 594

(6th Cir. 1989); see also Brown v. Matauszak, 415 F. App'x 608, 612, 613 (6th Cir. Jan. 31, 2011) (affirming dismissal of *pro se* complaint for failure to comply with "unique pleading requirements" and stating "a court cannot 'create a claim which [a plaintiff] has not spelled out in his pleading'" (quoting Clark v. Nat'l Travelers Life Ins. Co., 518 F.2d 1167, 1169 (6th Cir. 1975))); Payne v. Sec'y of Treas., 73 F. App'x 836, 837 (6th Cir. 2003) (affirming *sua sponte* dismissal of complaint pursuant to Fed. R. Civ. P. 8(a)(2) and stating, "[n]either this court nor the district court is required to create Payne's claim for her"); cf. Pliler v. Ford, 542 U.S. 225, 231 (2004) ("District judges have no obligation to act as counsel or paralegal to *pro se* litigants."); Young Bok Song v. Gipson, No. 09-5480, 2011 WL 1827441, at *4 (6th Cir. May 12, 2011) ("[W]e decline to affirmatively require courts to ferret out the strongest cause of action on behalf of *pro se* litigants. Not only would that duty be overly burdensome, it would transform the courts from neutral arbiters of disputes into advocates for a particular party. While courts are properly charged with protecting the rights of all who come before it, that responsibility does not encompass advising litigants as to what legal theories they should pursue."); *cert. denied*, ___ U.S. ___, 132 S. Ct. 461 (2011).

To state a claim under 42 U.S.C. § 1983,[4] a plaintiff must allege two elements: (1) a deprivation of rights secured by the "Constitution and laws" of the United States (2) committed by a defendant acting under color of state law. Adickes v. S.H. Kress & Co., 398 U.S. 144, 150 (1970). By its terms, § 1983 does not provide a right of action for violations of state law.

---

[4] Section 1983 provides: Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia.

The complaint contains no factual allegations against Defendants Parson and Burkett. When a complaint fails to allege any action by a defendant, it necessarily fails to "state a claim for relief that is plausible on its face." Twombly, 550 U.S. at 570.

The complaint does not state a valid claim against the City of Tiptonville. When a § 1983 claim is made against a municipality, the court must analyze two distinct issues: (1) whether plaintiff's harm was caused by a constitutional violation; and (2) if so, whether the municipality is responsible for that violation. Collins v. City of Harker Heights, Tex., 503 U.S. 115, 120 (1992). The second issue is dispositive of Plaintiff's claim against the City of Tiptonville.

A local government "cannot be held liable *solely* because it employs a tortfeasor—or, in other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory." Monell v. Dep't. of Soc. Serv., 436 U.S. 658, 691 (1978) (emphasis in original); see also Searcy v. City of Dayton, 38 F.3d 282, 286 (6th Cir. 1994); Berry v. City of Detroit, 25 F.3d 1342, 1345 (6th Cir. 1994). A municipality cannot be held responsible for a constitutional deprivation unless there is a direct causal link between a municipal policy or custom and the alleged constitutional deprivation. Monell, 436 U.S. at 691-92; Deaton v. Montgomery Co., Ohio, 989 F.2d 885, 889 (6th Cir. 1993). To demonstrate municipal liability, a plaintiff "must (1) identify the municipal policy or custom, (2) connect the policy to the municipality, and (3) show that his particular injury was incurred due to execution of that policy." Alkire v. Irving, 330 F.3d 802, 815 (6th Cir. 2003) (citing Garner v. Memphis Police Dep't, 8 F.3d 358, 364 (6th Cir. 1993)). "Where a government 'custom has not received formal approval through the body's official decisionmaking channels,' such a custom may still be the subject of a § 1983 suit." Alkire, 330 F.3d at 815 (quoting Monell, 436 U.S. at 690-91). The policy or custom "must be 'the moving force of the constitutional violation' in order

to establish the liability of a government body under § 1983." Searcy, 38 F.3d at 286 (quoting Polk Co. v. Dodson, 454 U.S. at 326 (citation omitted)). "[T]he touchstone of 'official policy' is designed 'to distinguish acts of the *municipality* from acts of *employees* of the municipality, and thereby make clear that municipal liability is limited to action for which the municipality is actually responsible.'" City of St. Louis v. Praprotnik, 485 U.S. 112, 138 (1988) (quoting Pembaur v. Cincinnati, 475 U.S. 469, 479-80 (1986)).

Although civil rights plaintiffs are not required to plead the facts demonstrating municipal liability with particularity, see Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit, 507 U.S. 163, 168-69 (1993), the complaint must be sufficient to put the municipality on notice of the plaintiff's theory of liability, see, e.g., Fowler v. Campbell, No. 3:06CV-P610-H, 2007 WL 1035007, at *2 (W.D. Ky. Mar. 30, 2007); Oliver v. City of Memphis, No. 04-2074-B, 2004 WL 3316242, at *4 (W.D. Tenn. Dec. 2, 2004); cf. Raub v. Corr. Med. Servs., Inc., No. 06-13942, 2008 WL 160611, at *2 (E.D. Mich. Jan. 15, 2008) (denying motion to dismiss where complaint contained conclusory allegations of a custom or practice); Chidester v. City of Memphis, No. 02-2556 MA/A, 2006 WL 1421099, at *3 (W.D. Tenn. June 15, 2005). Plaintiff's complaint does not identify any unconstitutional policy or custom of the City of Tiptonville that caused or contributed to his injuries.

Plaintiff's claims arising from his arrest and the police investigation in 2009 are time barred. The statute of limitations for a § 1983 action is the "state statute of limitations applicable to personal injury actions under the law of the state in which the § 1983 claim arises." Eidson v. Tenn. Dep't of Children's Servs., 510 F.3d 631, 634 (6th Cir. 2007); see also Wilson v. Garcia, 471 U.S. 261, 275-76 (1985). The limitations period for § 1983 actions arising in Tennessee is the one-year limitations provision found in Tennessee Code Annotated § 28-3-104(a). Roberson v. Tenn., 399

7

F.3d 792, 794 (6th Cir. 2005); Hughes v. Vanderbilt Univ., 215 F.3d 543, 547 (6th Cir. 2000); Berndt v. Tenn., 796 F.2d 879, 883 (6th Cir. 1986). The Supreme Court's decision in Wallace v. Kato, 549 U.S. 384, 391-92, 397 (2007), makes clear that a claim for false arrest or imprisonment accrues at the time of arrest or, at the latest, when detention without legal process ends.[5]

Plaintiff's complaint was signed on November 1, 2011, so all claims arising from events that occurred prior to November 1, 2010, are time barred. Plaintiff's arrest on June 12, 2009, the alleged failures to investigate on that date and on June 18, 2009, and the alleged breaches of duty committed by Defendants Rhodes and Spicer in June, 2009, are outside of the statute of limitations.

Plaintiff has no claim against Defendants Rhodes and Spicer arising from their allegedly false testimony at his trial. In Briscoe v. LaHue, 460 U.S. 325, 326 (1983), the Supreme Court held that police officers are absolutely immune from suits for money damages for alleged perjury during criminal trials.

Therefore, the Court DISMISSES the complaint in its entirety, pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1). The claim for money damages against Defendants Rhodes

---

[5] The Supreme Court explained:
> Reflective of the fact that false imprisonment consists of detention without legal process, a false imprisonment ends once the victim becomes held *pursuant to such process* — when, for example, he is bound over by a magistrate or arraigned on charges. Thereafter, unlawful detention forms part of the damages for the "entirely distinct" tort of malicious prosecution, which remedies detention accompanied, not by absence of legal process, but by *wrongful institution* of legal process. If there is a false arrest claim, damages for that claim cover the time of detention up until issuance of process or arraignment, but not more. From that point on, any damages recoverable must be based on a malicious prosecution claim and on the wrongful use of judicial process rather than detention itself. Thus, petitioner's contention that his false imprisonment ended upon his release from custody, after the State dropped the charges against him, must be rejected. It ended much earlier, when legal process was instituted against him, and the statute [of limitations] would have begun to run from that date.

Id. at 389-90 (internal quotation marks, footnote & citations omitted); see also id. at 390 n.3 ("This is not to say, of course, that petitioner could not have filed suit immediately upon his false arrest. While the statute of limitations did not begin to run until petitioner became detained pursuant to legal process, he was injured and suffered damages at the moment of his arrest, and was entitled to bring suit at that time.").

8

and Spicer arising from their alleged false testimony at Plaintiff's trial is also DISMISSED pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(iii) and 1915A(b)(1).

Pursuant to 28 U.S.C. § 1915(a)(3), the Court must also consider whether an appeal by Plaintiff in this case would be taken in good faith. The good faith standard is an objective one. Coppedge v. United States, 369 U.S. 438, 445 (1962). The test for whether an appeal is taken in good faith is whether the litigant seeks appellate review of any issue that is not frivolous. Id. It would be inconsistent for a district court to determine that a complaint should be dismissed prior to service on the Defendants, but has sufficient merit to support an appeal *in forma pauperis*. See Williams v. Kullman, 722 F.2d 1048, 1050 n.1 (2d Cir. 1983). The same considerations that lead the Court to dismiss this case for failure to state a claim and as seeking money damages from a party who is immune from that relief also compel the conclusion that an appeal would not be taken in good faith.

It is therefore CERTIFIED, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal in this matter by Plaintiff would not be taken in good faith.

The Court must also address the assessment of the $455 appellate filing fee if Plaintiff nevertheless appeals the dismissal of this case. A certification that an appeal is not taken in good faith does not affect an indigent prisoner plaintiff's ability to take advantage of the installment procedures contained in § 1915(b). See McGore v. Wrigglesworth, 114 F.3d 601, 610-11 (6th Cir. 1997). McGore sets out specific procedures for implementing the Prison Litigation Reform Act, 28 U.S.C. § 1915(a)-(b). Therefore, the Plaintiff is instructed that if he wishes to take advantage of the installment procedures for paying the appellate

filing fee, he must comply with the procedures set out in McGore and § 1915(a)(2) by filing an updated *in forma pauperis* affidavit and a current, certified copy of his inmate trust account for the six months immediately preceding the filing of the notice of appeal.

For analysis under 28 U.S.C. § 1915(g) of future filings, if any, by Plaintiff, this is the second dismissal of one of his cases as frivolous or for failure to state a claim.[6] This "strike" shall take effect, without further action by the Court, upon expiration of the time for filing a notice of appeal, the dismissal of any appeal, or the affirmance of this Court's ruling on appeal, whichever is later.

The Clerk is directed to prepare a judgment.

IT IS SO ORDERED.

  s/ **James D. Todd**
JAMES D. TODD
UNITED STATES DISTRICT JUDGE

---

[6] Plaintiff previously filed Parson v. Avery, No. 11-1367-JDT-egb (W.D. Tenn. Aug. 3, 2012) (dismissed for failure to state a claim).